## MAULDIN v. SEABOARD AIR LINE RY.

1. DEMURRER.—That a Circuit Judge tries a case on the merits is sufficient to show that he overruled a demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, and a succeeding Circuit Judge on a second trial of the case cannot consider the demurrer.

2. APPEAL.—If defendant permit allegations to remain in complaint, he cannot complain if evidence be received in support of it.

3. COMMON CARRIER—EVIDENCE—PAROL.—In action by manufacturer against carrier for damages for failure to furnish cars to ship special orders for lumber it is not error to permit witness to testify as to verbal orders which were subsequenty submitted in writing, as the verbal orders probably influenced the conduct of the business.

4. EVIDENCE—OPINION—DAMAGES.—In such case plaintiff should not state estimate of amount of damages in lump sums, but should state items of damages.

5. CARRIER—DAMAGES—PUNITIVE.—Where failure to furnish cars to shipper is due alone to unprecedented rush of business, there is no ground for punitive damages, and failure to answer letters or telegrams is not evidence of a wilful disregard of plaintiff's rights.

6. IBID.—IBID.—FREIGHT.—A shipper is not entitled to damages for failure to carry his freight caused by a sudden and unusual press

of business which could not reasonably have been anticipated by the carrier, in absence of special contract. )

Before KLUGH, J., Hampton, October, 1904. Reversed.

Action by Joab Mauldin against Seaboard Air Line Ry. From judgment for plaintiff, defendant appeals.

*Messrs. Lyles & McMahan* and *Jas. W. Moore,* for appellant. *Mr. Moore* cites: *Decision of demurrer should be committed to writing:* Code of Proc., 289, 273, 290; 3 Thomas' Coke, 447; 3 Wait. Pr., 394; 2 Gra. & Wat. on New Trials, 32. *Rights of ordinary shipper:* 6 Cyc., 372, 373; 71 Wis., 372; 68 Am. D., 574; 40 Mo., 319; 79 Mo., 296; 28 Am. R., 682; 10 Ind., 503; 5 Ind., 209; 10 Ky. L. R., 1020; 43 La., 227; 4 McCrany, 1405; 5 Ency., 2 ed., 176, 160, 177.

*Messrs. Lyles & McMahan* cite: *Order must be in writing:* Code of Proc., 401; 14 Ency. P. & P., 992; 6 Ency. P. & P., 380; 58 S. C., 158; 51 S. C., 36. *Evidence as to loss of custom error:* 60 S. C., 269; 48 S. E. R., 616. *Opinion of damages in lump sum:* 45 S. C., 3; 33 S. C., 427; 61 S. C., 337; 4 Wigmore, 2577. *No evidence of exemplary damages:* 29 S. C., 277. *Duty of carrier to furnish cars:* 65 S. C., 281; 4 Elliott on R. R., secs. 1470, 1473, 1476, 1477, 1691; 4 A. & E. R. R. Cas., 390; 5 Ency., 2 ed., 167.

*Mr. E. F. Warren,* contra, cites: *Demurrer once overruled cannot be renewed:* 15 S. C., 535; 43 S. C., 221; 51 S. C., 33; 58 S. C., 152. *Oral testimony may show negotiations leading to writing:* 57 S. C., 60; 66 S. C., 68.

November 14, 1905.   The opinion of the Court was delivered by

MR. JUSTICE WOODS. The plaintiff alleged he was engaged in the manufacture of lumber at Duke's siding, on the line of defendant's railroad, "solely on bills and orders for special sizes, lengths and quality, and to be delivered to plain-

tiff's customers and to markets aforesaid under contract at and by special and stated times," and although the defendant was notified of the character of his business and of his contracts for lumber being overdue, and although frequent demands were made for cars to ship lumber on these contracts, yet the defendant wilfully, maliciously, wantonly and negligently failed and refused to furnish the cars required. The items of damage set up were: (1) expense and inconvenience of piling the accumulating lumber; (2) depreciation of value of lumber; (3) cancellation of orders, making sales necessary at reduced price; (4) loss of custom. On the first trial of the cause, plaintiff obtained a verdict for $1,400, but a new trial was ordered by his Honor, Judge Aldrich, unless the plaintiff would remit all the recovery above $600, and plaintiff elected to take a new trial rather than remit $800 of his verdict. On the second trial before Judge Klugh, the verdict was for $1,850, and judgment was entered accordingly.

The first question made by the appeal is whether Judge Klugh was right in finding, as a matter of fact, that Judge Aldrich, at the former trial, had overruled the written demurrer submitted to him on the ground that the complaint failed to state facts sufficient to constitute a cause of action; and as a matter of law that this decision of Judge Aldrich was binding on him, though not reduced to writing and signed. Inasmuch as it was admitted by counsel that the demurrer was presented to Judge Aldrich and he subsequently proceeded with the trial of the cause, it necessarily follows he overruled the demurrer. It is true, the decision as to the demurrer should have been given in writing and signed, as required by section 289 of the Code of Procedure. But an order of this kind does not dispose of the cause, and no formal judgment is entered on it; and hence if counsel do not request that it be reduced to writing, the requirement of the statute may well be deemed waived. After the demurrer had been overruled by Judge

Aldrich, it could not again be considered by Judge Klugh. *Turner* v. *Association,* 51 S. C., 33, 27 S. E., 947.

The plaintiff having alleged in his complaint loss of custom as an item of damage arising out of defendant's failure to furnish cars, and no motion having been made to strike out this allegation, the defendant cannot be heard to complain that evidence was introduced on this subject. *Martin* v. *Ry. Co.,* 70 S. C., 8.

There was no error in refusing the motion to strike out plaintiff's evidence as to the verbal orders for lumber received by him, made on the ground that the written orders following the verbal were the best evidence of the orders which plaintiff alleged he was prevented from filling. Most probably these verbal orders at the time they were received, became the main factors which influenced the conduct of plaintiff's business rather than the subsequent confirmatory written orders.

The sixth exception alleges error in allowing the plaintiff to give in a lump sum his estimate of the aggregate damages sustained by reason of the failure of the railroad company to furnish cars. The general rule is that the opinions of witnesses as to the *quantum* of damages are not admissible. 3 Elliott on Evidence, sec. 2006. One recognized exception to this rule is thus stated in 1 Wharton on Evidence, sec. 511, quoted with approval in *Jones* v. *Fuller,* 19 S. C., 66, 69 : "When the thing damaged is one of every day use, whose depreciation an ordinary observer can estimate, then such an observer may be called to express his opinion of the extent of the damage sustained. If the facts which form the basis of such an opinion can be specified, then they must be stated; if the conclusion is one which the jury can draw, then to the jury must be left the drawing the conclusion. But when, as is often the case, these facts can be best expressed by the damage they cause, then this damage and its extent may be testified to by the witness." Under this exception it was competent for the witness to describe the condition of the lumber due to exposure to weather and

give his estimate of the depreciation, and so with the other separate items of damage; but it was not competent to give a lump estimate of the total damage without indicating the items which entered into it, for the reason that it was impossible for the jury to separate the items of damage which, under the instructions of the Court, could be considered the proximate result of defendant's alleged breach of duty, and for which it might be liable from those items of alleged damage which, under the instruction of the Court, would be too remote to enter into the verdict.

The Circuit Judge refused to charge the request that there was no evidence to warrant a verdict for punitive damages. Not only was there no evidence offered of malicious, wilful or reckless refusal to furnish cars for plaintiff's lumber, but it was stated by plaintiff himself that there was a "tie-up of the cars." The uncontradicted testimony on behalf of the defendant was that this "tie-up" was due to an abnormal demand for cars of all kinds, especially flat-cars, that it was impossible for defendant to get orders for cars filled or to get them from other roads, and frequently impossible to get defendant's own cars on other roads returned. Some cars were furnished for plaintiff's lumber, and there was no evidence whatever of any intentional discrimination against him. The local agent assured plaintiff he would get cars as soon as possible, and the mere failure in the circumstances to answer a telegram or a letter asking for cars is no evidence of wilful disregard of plaintiff's rights. There was, therefore, no ground for refusing to charge that the defendant had not incurred liability for punitive damages.

Another request erroneously refused was as follows: "The obligation to furnish cars in this case is an obligation imposed by law, and is not as binding as if the defendant railroad had contracted to furnish the cars. In this case the defendant is not liable if it has shown a reasonable excuse for failure to furnish the cars; heavy and unprecedented traffic, not reasonably to be expected and pre-

pared for, would excuse the railroad for a deficiency of cars."
If a common carrier assumes a contractual obligation outside
of and beyond the duty imposed by public policy, it must
perform the contract or pay the damages, unless it can show
circumstances which relieve from the performance of con-
tracts generally, and unexpected emergencies in its business
would not be sufficient to excuse it.    4 Elliott on Railroads,
sec. 1473.    Here, however, the claim is not based on a con-
tract, but on the ordinary public duty of the carrier to
receive and transport promptly all freight offered.    Prompt-
ness in transportation is of great and increasing importance,
and hence common carriers should be required to use every
reasonable means and to take every reasonable precaution to
insure it.    They should not only have ample rolling stock
for the prompt dispatch of all passenger and freight business
usually to be expected, but they should by all reasonable fore-
thought and effort prepare for unusual demands for trans-
portation.    And such forethought requires not only a study
of their own business, but of the industries, the development
and the progress of the country whose carrying business they
undertake.    But this duty does not extend to the acceptance
and immediate transportation of freight at all hazards and
in all circumstances.    The true rule is thus stated in 5 A. &
E. Ency. Law, 168: "Where there is a sudden and unusual
press of business, arising from exceptional causes, and which
the company could not reasonably be expected to have antici-
pated, it is not liable for the delay thereby necessitated,
unless it had specially contracted to furnish such transporta-
tion; it is bound to provide facilities for such transportation
only as might reasonably have been anticipated."    *Porcher*
v. *R. R. Co.,* 14 Rich., 181; *Ayres* v. *Ry. Co.,* 5 Am. St.
Rep., 226 (Wis.); *R. R. Co.* v. *Rae,* 68 Am. Dec., 574; 4
Elliott on Railroads, secs. 1470, 1473; 6 Cyc., 373.

The judgment of this Court is, that the judgment of the
Circuit Court be reversed, and the case be remanded for a
new trial.

*The* CHIEF JUSTICE *did not participate in this opinion
because of illness.*